DEPARTMENT OF THE TREASURY, U.S. CUSTOMS SERVICE, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent,

National Treasury Employees Union, Intervenor.

No. 86–1198.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 20, 1987.

Decided Jan. 19, 1988.

John S. Koppel, Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty. and Douglas N. Letter, Dept. of Justice were on the brief, William Kanter, Dept. of Justice, Washington, D.C., also entered an appearance for petitioner.

Robert J. Englehart, Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., Steven H. Svartz and William E. Persina, Deputy Sol., and Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Gregory O'Duden, Washington, D.C., for intervenor. Lois G. Williams, Washington, D.C., and Richard S. Edelman were on the brief, for intervenor.

Mark D. Roth and Stuart A. Kirsch, Washington, D.C., were on the brief for amicus curiae, American Federation of Government Employees, AFL–CIO, urging affirmance of the Federal Labor Relations Authority decision.

Before GINSBURG and BUCKLEY, Circuit Judges, and FAIRCHILD *, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge FAIRCHILD.

FAIRCHILD, Senior Circuit Judge:

The Federal Labor Relations Authority (the Authority) has ordered the Customs Service of the Department of the Treasury (the Agency) to bargain with the National Treasury Employees Union (the Union) concerning a Union proposal that the Agency agree to pay travel expenses incurred by employees while using "official time," granted under 5 U.S.C. § 7131(a) or (d), in representing the Union. The Agency has petitioned for review and the Authority for enforcement.

Congress has provided for a system of collective bargaining on behalf of federal civil service employees, tailoring the system to meet the special requirements and needs of the government. 5 U.S.C. §§ 7101–7135, Federal Service Labor–Management Relations Statute, hereinafter the Statute. The Statute requires that employees representing a union in the negotiation of a collective bargaining agreement "be authorized official time," i.e., receive their regular pay for time they would otherwise be in a duty status.[1]

An older statute, the Travel Expense Act (TEA), provides for reimbursement to employees of types of travel expense incurred "while traveling on official business." 5 U.S.C. §§ 5701 et seq.

The Authority was created to carry out the purpose of the Statute. §§ 7104, 7105. It formerly took the position that an employee on "official time" and therefore paid for his time, was ipso facto engaged in "official business for the Government," and hence was entitled to travel expense reimbursement. Interpretation and Guidance, 2 FLRA 265, 269 (1979). In an application of that position, the Authority ordered the Bureau of Alcohol, Tobacco & Firearms to pay contested travel expenses.[2] The Bureau eventually obtained Supreme Court review. Rejecting the Authority's interpretation, the Supreme Court held that the TEA did not require an agency to reimburse its employees for travel expenses they incurred in carrying out their functions as union representatives. *Bureau of*

---

* Of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Section 7131(d) requires that "an employee representing an exclusive representative [otherwise than in negotiation of a collective bargaining agreement] ... shall be granted official time in any amount the agency and the [union] agree to be reasonable, necessary, and in the public interest." The text of the Union Proposal, at issue in this case, is: "The employer agrees to pay the travel expenses incurred by employees while using official time available under the terms of this agreement." The Union Proposal could perhaps be construed to refer only to official time under § 7131(d), and indeed the Union took that position before the Authority. Union Reply, p. 1, July 20, 1984. It appears, however, that the Authority has construed the proposal as embracing § 7131(a) official time as well, and the briefing before us is consistent with that construction.

2. *Bureau of Alcohol, Tobacco and Firearms and National Treasury Employees Union, Chapter 81,* 4 FLRA 288 (1980).

*Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983), hereinafter referred to as *BATF.*

In resolving the question presented in *BATF,* the Court took note of the practice and rulings of the Comptroller General under TEA. Payment had been declared generally appropriate by the Comptroller General where the travel was sufficiently in the interest of the United States so as to be regarded official business. 44 Comp.Gen. 188, 189 (1964). Prior to enactment of the Statute, when federal collective bargaining had been governed by Executive Order, payments for travel of employee negotiators, specifically, had been permitted on a certification that the travel served the convenience of the employing agency or was in the primary interest of the government. 464 U.S. at 100 n. 11, and 106, 104 S.Ct. at 446 n. 11, and 448.

The Court said in *BATF:* "[N]either Congress' declaration that collective bargaining is in the public interest nor its use of the term of art 'official time' warrants the conclusion that employee negotiators are on 'official business' of the Government." 464 U.S. at 107, 104 S.Ct. at 449. In so ruling the Court disapproved the Authority's equation of the Statute's reference to "official time" and TEA's reference to "official business." In a footnote, however, the Court indicated that while the Statute's grant of "official time" did not *entitle* employees engaged in representational activities to be reimbursed for travel expenses, a union was not *precluded* from negotiating such a demand:

> Our conclusion that federal agencies may not be required under § 7131(a) to pay the travel expenses and per diem allowances of union negotiators *does not, of course, preclude* an agency from making such payments upon a determination that they serve the convenience of the agency or are otherwise in the primary

interest of the Government, as was the practice prior to passage of the Act. Furthermore, unions *may presumably negotiate for such payments* in collective bargaining as they do in the private sector. Indeed, we are informed that many agencies presently pay the travel expenses of employee representatives pursuant to collective bargaining agreements.

464 U.S. at 107 n. 17, 104 S.Ct. at 449 n. 17 (emphasis added) (citations omitted).

The Authority's original order in the matter now under review [3] had been issued before the Supreme Court's decision in *BATF.* That order, which required the Agency to bargain over the Union's proposal, was based on the Authority's original view that an employee on "official time" under § 7131 was necessarily on "official business" for TEA purposes and was therefore entitled to travel expense reimbursement. The Agency had petitioned for review. After *BATF,* the Authority requested, and this court ordered, a remand for renewed Authority consideration in the light of the Supreme Court's opinion.

On remand, after inviting and receiving statements of position from the parties, the Authority again ordered bargaining.[4] This time, the Authority reasoned that the proposal was bargainable because it involved a condition of employment not specifically provided for by a federal statute.[5] The Authority concluded that an agency's determination in this context whether to pay travel expenses, *i.e.,* whether travel served the convenience of an agency or was otherwise in the primary interest of the government, is within the discretionary administrative authority of the agency. It found no conflict between the Union proposal and any proscription of TEA or the Federal Travel Regulations (FTRs).

The Authority explained that it "has consistently held that insofar as an agency has

---

**3.** *National Treasury Employees Union and Department of the Treasury, U.S. Customs Service,* 9 FLRA 629 (1982).

**4.** *National Treasury Employees Union and Department of Treasury, U.S. Customs Service,* 21 FLRA No. 2 (1986).

**5.** An agency's duty to bargain under the Statute is derived from § 7114(a)(4) and (b)(2), and the definitions of collective bargaining and conditions of employment, § 7103(a)(12) and (14), as well as § 7117(a)(1). *American Federation of Government Employees, AFL–CIO, Local 32 and Office of Personnel Management,* 8 FLRA 409, 410 n. 3 (1982).

discretion regarding a matter affecting conditions of employment it is obligated under the Statute to exercise that discretion through negotiation unless precluded by regulatory or statutory provisions." In so reasoning and ruling, the Authority exercised its "special function of applying the general provisions of the [Statute] to the complexities" of federal labor relations; its view is accordingly entitled to considerable deference. *BATF*, 464 U.S. at 97, 104 S.Ct. at 444.

The Authority also noted:

The Union has acknowledged that payment of any travel expenses flowing from this proposal, if agreed upon, would be subject to the provisions of the FTRs. Hence, we conclude the proposal would not require the Agency to authorize either specific travel or expenses which do not comport with the regulatory requirements and restrictions. The proposal was not intended to, and could not, require the Agency to use specific authorization procedures and practices relating to actual travel which conflicted with the FTRs. It would not foreclose individual determinations regarding the propriety under the FTRs of authorizing particular travel and expenses. To the extent that case-by-case determinations are required under law and regulation, this proposal would not be inconsistent with such procedures. Thus the Agency's contention that the proposal is inconsistent with Federal law and Government-wide regulations must be rejected.

21 FLRA No. 2, at 6–7 (citations omitted).

The Supreme Court's footnote statement in *BATF* that "unions may presumably negotiate for [travel expense] payments in collective bargaining as they do in the private sector," coupled with the Court's recognition that many agencies pay travel expenses pursuant to collective bargaining agreements, would appear to require enforcement of the Authority's order in the present case. The footnote observation, however, is not dispositive because of its tentative form (the Court said "presumably") and because the Court's margin remarks were not essential to the determination of the *BATF* controversy.

Leaving the Court's lengthy footnote observation aside, however, it pretty clearly appears that the Court accepted the past interpretations of TEA permitting agencies to pay for travel in this context if the appropriate determinations are made (i.e., the travel serves the convenience of the agency or is otherwise in the primary interest of the government). *See supra* p. 1383.

The issue in this case turns upon the character of the agency determinations required before travel expenses can be paid. The Authority's view is that those determinations are largely discretionary, and we agree that to the extent the travel expense reimbursement is discretionary, a proposal that the discretion shall always be exercised in favor of the employees must be bargained about. The Agency argues that the determinations are "adjudicatory," suggesting that "convenience" and "primary interest" pose fairly narrow issues of fact, capable of objective determination, open to little debate once the details of the situation are considered.

The Authority seems to concede that there may be circumstances under which it would be unreasonable to determine that travel of an employee negotiator would serve the convenience of the agency or the primary interest of the government, and when this is true, the payment of travel expenses would be unlawful. The Authority concludes, however, that in such a case, the Union's proposal, even if agreed to without modification,[6] would not apply, for the proposal cannot sensibly be read to require an unlawful payment. On the other hand, in those many circumstances in which it could reasonably be said that travel would serve the convenience of the agency or the primary interest of the government, acceptance of the proposal would bind the agency to make the favorable determination.

---

**6.** In analyzing whether the proposal is bargainable, one necessarily tests it by assuming, *arguendo,* that it is accepted and becomes part of a collective bargaining agreement. We make this assumption, of course, solely for the purpose of analysis. The Authority does not know, nor do we, whether the proposal will be entirely agreed upon, agreed upon with modifications or only in part, or totally rejected.

The terms "convenience" and, particularly, "primary interest" have great breadth. In many situations, reasonable persons could differ as to the appropriate determination. The determinations will be made by those in management whose subjective perception of the value of collective bargaining is likely to affect their decisions. We have no doubt, in a practical sense, that if an agency has agreed to make the determination in favor of paying travel expenses in every case except those where the travel could not be said to serve the agency's convenience or the government's primary interest, there will be many more authorizations of this type of travel expense reimbursement than if there is no such agreement. In short, the critical words in the standards governing payment of travel expenses have some "stretch" in them. It is a reasonable view that employees should be able collectively to seek to ensure that they get the benefit of the "stretch" as often as possible.

In contending that travel expense determinations are essentially adjudicatory, and not discretionary, the Agency relies on *U.S. Dep't of Justice v. Federal Labor Relations Authority*, 727 F.2d 481, 490 (5th Cir.1984). In that case, the Authority took the position that decisions as to the appropriate means of transportation are discretionary on the part of the agency, and where there was a practice of permitting employees to use privately owned automobiles for certain types of travel, it would be an unfair labor practice to change that practice unilaterally. The Fifth Circuit examined the FTRs and held the agency did not have the alleged broad discretion to establish the practice claimed, and that a case-by-case determination must be made regarding the mode of transportation to be used. The issue in each case would be whether the use of a privately owned vehicle was advantageous to the government. The pertinent FTRs required comparison with available transportation by common carrier or government vehicle, and consideration of energy conservation, cost, overtime, lost worktime, and how quickly the employee needs to arrive. The specificity required by those regulations makes that case readily distinguishable.

As already noted, we do not count as dispositive the footnote suggestion in *BATF* that there can be collective bargaining over travel expense reimbursement policy. The Court's extended comment, however, does place a caveat on the discussion in the *BATF* opinion of the determinations required in order to authorize travel at government expense. This much seems fair to say—the proposition for which the Agency contends, that payment of travel expenses inevitably entails individualized, adjudicatory-style factfinding, leaving no play for discretion, and therefore no possibility of settlement by negotiation, was not so obvious as to command the approbation of the Justices.

There is no little ambiguity in the problem we confront. TEA has long authorized reimbursement of the travel expenses of an employee on "official business." This has been interpreted to include travel sufficiently in the interest of the United States so as to be regarded as "official business." On the one hand, Congress deemed collective bargaining sufficiently in the public interest to require that employees be paid for time spent in that activity. But on the other hand, Congress did not deem the activity always sufficiently in the public interest to be equivalent to "official business." Such activity has, however, been deemed "official business" when it is determined that travel in the course of the activity serves the convenience of the agency or is otherwise in the primary interest of the government. That determination may be made at the bargaining table: "In considering whether a determination of advantage to the Government should be made, it appears that consultation and negotiation with employees as represented by their labor organizations would be appropriate." *Federal Aviation Science and Technological Ass'n, Nat'l Ass'n of Gov't Employees and Federal Aviation Admin., Dep't of Transp.*, 6 FLRC 723, 727 (1978).

The Authority, created by Congress to administer the Statute, has concluded that the determinations of convenience of the agency and primary interest of the government are discretionary in large measure and to the extent such discretion exists, the agencies are required to bargain about how

it will be exercised. Although the Authority has no particular expertise in interpretation of *TEA,* it is entitled to considerable deference in applying the general provisions of the Statute concerning collective bargaining. *BATF,* 464 U.S. at 97, 104 S.Ct. at 444.

We conclude that the Authority correctly decided that there is a large measure of discretion in the determination of an agency's convenience and the government's primary interest, and that the Agency here must bargain as to its exercise of that discretion.

The petition for review is DENIED and the Order is ENFORCED.