**DEPARTMENT OF THE TREASURY, UNITED STATES CUSTOMS SERVICE, Petitioner,**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent**

**National Treasury Employees Union (NTEU), Intervenor.**

**No. 88–1308.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 6, 1989.

Decided May 2, 1989.

Peter R. Maier, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on the brief, for petitioner.

William E. Persina, Acting Sol., Federal Labor Relations Authority ("FLRA"), Washington, D.C., for respondent. Ruth E. Peters and Elsa D. Newman, Attys., FLRA, Washington, D.C., also entered appearances for respondent.

Clinton D. Wolcott, with whom Gregory O'Duden and Elaine Kaplan, Washington, D.C., were on the brief, for intervenor. Lois G. Williams, Washington, D.C., also entered an appearance for intervenor.

Before RUTH BADER GINSBURG, SILBERMAN, and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The Department of the Treasury petitions for review of a Federal Labor Relations Authority order requiring it to bargain over certain proposals presented by the National Treasury Employees Union during the course of collective bargaining. The FLRA cross-applies for enforcement. Treasury argues that the disputed proposals, which concern on-site residency requirements at the Federal Law Enforcement Training Center, are not negotiable because they conflict with a government-wide regulation and federal law. We conclude that the Authority reasonably determined that the regulation at issue is not "government-wide," and that the proposals do not conflict with federal law. Accordingly, we deny the petition for review on this issue and enforce the FLRA's order.*

## I. BACKGROUND

### A. Statutory Scheme

The Federal Service Labor–Management Relations Statute, 5 U.S.C. §§ 7101–7135 (1982 and Supp. IV 1986) ("LMRS"), requires that federal agencies and unions representing federal employees bargain in good faith in order to reach a collective bargaining agreement concerning "conditions of employment." *Id.* §§ 7114(a)(4), 7103(a)(12). "Conditions of employment" include most personnel policies except to the extent that "such matters are specifically provided for by Federal statute." *Id.*

§ 7103(a)(14). Similarly, the duty to bargain does not extend to matters that would bring about an inconsistency with federal law, government-wide rule or regulation, or an agency regulation for which a compelling need exists. *Id.* § 7117(a)(1)-(2).

### B. The Federal Law Enforcement Training Center

In 1966, Congress directed the "head of each agency . . . [to] establish, operate, and maintain a program or programs, and a plan or plans . . . for the training of employees in or under the agency by, in, and through Government facilities and non-Government facilities." 5 U.S.C. § 4103(a).

Pursuant to this authority, the Secretary of the Treasury ("Secretary") established the Federal Law Enforcement Training Center ("FLETC" or "Center") in March 1970 as an interagency training facility. Treasury Department Order No. 217 (Mar. 2, 1970). On September 30, 1970, the Department of the Treasury ("Treasury") and seven other federal agencies, including the Departments of Interior, Justice, and State, entered into a "Memorandum of Understanding" ("Memorandum") governing the sponsorship and operation of FLETC. The Memorandum has since been amended, and the number of sponsoring agencies increased to eighteen.

Although FLETC exists within the organizational structure of the Treasury Department, it is governed by an eight-member Board of Directors of whom one is designated by Treasury. FLETC's day-to-day operations are overseen by a Director who is selected by the Secretary, subject to the approval of the Board. The Board has final authority over, *inter alia*, "[e]stablishment of policy as to student residence requirements." FLETC Directive No. 20–01.A (Jan. 7, 1980) ("Directive") reaffirms FLETC's "longstanding policy" of requiring students in training to reside on-site,

---

* Treasury also seeks review of the FLRA's determination that a proposal allowing excepted service employees to challenge adverse personnel actions through a grievance-arbitration procedure is negotiable because it does not conflict

with federal law. We grant the petition for review on this issue for the reasons stated in the companion case of *Department of Treasury, Office of Chief Counsel v. FLRA,* 873 F.2d 1467 (D.C.Cir.1989), also issued today.

but empowers the Director to make exceptions to this requirement.

## C. Procedural Background

During collective bargaining negotiations with the Customs Service, the National Treasury Employees Union ("NTEU") advanced two proposals relating to government travel and lodging at FLETC:

Employees attending [FLETC] will not be required to live on base or in government provided housing. Those choosing to make their own housing arrangements will be reimbursed an amount equivalent to that which Customs pays [FLETC] per student for room and board. If requested, these funds will be provided to the employee before his departure from his duty station.

Bargaining unit employees attending [FLETC] or traveling on official business for any other purpose will not be required to share a room.

The Customs Service refused to bargain over these proposals, arguing that they were inconsistent with the Directive's requirement of on-site residency, which Customs regarded as a government-wide regulation. Customs also asserted that the proposals were nonnegotiable because they conflicted with 5 U.S.C. § 5911(e), which governs the circumstances under which federal employees may be required to occupy quarters on a rental basis. NTEU appealed Customs' determinations of nonnegotiability to the Federal Labor Relations Authority ("FLRA" or "Authority") pursuant to section 7117(c) of the LMRS.

The Authority concluded that the proposals were negotiable. *NTEU and Dep't of the Treasury and U.S. Customs Serv.*, 31 F.L.R.A. No. 22 (Feb. 22, 1988). The FLRA found that the Directive did not satisfy the Authority's test for a government-wide regulation because it did not apply to the federal workforce as a whole. *Id.* at 17. It also found that the proposals did not conflict with 5 U.S.C. § 5911(e) because that provision gives agencies discretion in deciding whether to require employees to occupy rental quarters. *Id.* at 17–18. Treasury petitioned this court for review, NTEU intervened, and the FLRA cross-applied for enforcement.

## II. DISCUSSION

### A. The FLETC Directive

■ Under the LMRS, an agency must bargain in good faith over "matters which are the subject of any rule or regulation only if the rule or regulation is not a Government-wide rule or regulation." 5 U.S.C. § 7117(a)(1). The Directive requires that students in training at FLETC live on-site for a number of reasons, including ease of access to the Center, exposure to other students for discussion, use of the gym and library facilities, and availability of a change of clothing. The Directive indisputably conflicts with the NTEU proposals. Thus, if the Directive is government-wide, the proposals are nonnegotiable.

We accord "considerable deference" to the FLRA's interpretation of the LMRS. *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 443, 78 L.Ed.2d 195 (1983). Indeed, negotiability determinations such as this one will be upheld if they are "'reasonably defensible.'" *Overseas Educ. Ass'n v. FLRA*, 827 F.2d 814, 816 (D.C.Cir.1987) (citation omitted).

The FLRA's test for determining whether a regulation is government-wide is whether it is "generally applicable throughout the Federal Government, *i.e.*, appl[ies] to the Federal civilian workforce *as a whole*, though not, of course to every Federal employee." *National Treasury Employees Union, Chap. 6 and Internal Revenue Serv., New Orleans Dist.*, 3 F.L.R.A. 748, 755 (1980) (emphasis in original). We not only defer to this test, we have applied it. *See, e.g., Overseas Educ. Ass'n*, 827 F.2d at 816–17. In this case, the FLRA found that the Directive is not a government-wide regulation because it was issued by the FLETC Director, governs only the internal operations of FLETC, and applies to federal employees only insofar as they are assigned for training at the Center. 31 F.L.R.A. No. 22 at 17. As we find the

FLRA's conclusion to be clearly reasonable, we decline to overturn its determination.

Treasury's protestations to the contrary are unpersuasive. First, it argues that the Directive is government-wide because it applies to a substantial number of employees in many government agencies, as evidenced by the estimated 30,000 students from over fifty federal organizations who will receive training at FLETC this year. It cites *Overseas Education Association* in support of its contention that these statistics suffice to establish the Directive as a government-wide regulation. That case, however, is inapposite. In *Overseas Education Association,* we affirmed the FLRA's determination that the Department of State Standardized Regulations, which govern overseas allowances for civilian employees, are "government-wide" because they apply to employees of *all* government agencies who are stationed overseas. 827 F.2d at 816–17. Here, in contrast, the Directive does not apply to the federal workforce as a whole, but only to employees of agencies that send personnel to a particular facility, FLETC, for training. Second, Treasury argues that the Directive is a government-wide regulation because there is an "inherent need for government-wide uniformity" in FLETC's on-site residence policy. This argument fails because it speaks to the desirability of a government-wide regulation rather than to the existence of one.

### B. Section 5911(e)

█ Under the LMRS, the bargaining obligation does not extend to matters that are "inconsistent with any Federal law." 5 U.S.C. § 7117(a)(1); § 7103(a)(14). Treasury argues that the Authority incorrectly determined that the NTEU proposals did not conflict with 5 U.S.C. § 5911(e), which states:

> The head of an agency may not require an employee or member of a uniformed service to occupy quarters on a rental basis, unless the agency head determines that necessary service cannot be rendered, or that property of the Government cannot adequately be protected, otherwise.

The FLRA found that section 5911(e) vests an agency with discretion to require employees to reside in rental quarters because the alternative determinations it must make under the section—namely, that "necessary service cannot be rendered," or that property of the government cannot "adequately be protected," without an employee in residence—are both discretionary. 31 F.L.R.A. No. 22 at 18. Accordingly, the FLRA concluded that bargaining over NTEU's proposals would not conflict with section 5911(e). *Id.*

We agree. This case is largely indistinguishable from *Department of Treasury, U.S. Customs Serv. v. FLRA,* 836 F.2d 1381 (D.C.Cir.1988), in which a union submitted a proposal concerning reimbursement of travel expenses for employees representing the union. Treasury argued that the proposal was inconsistent with federal laws and regulations establishing that such payments could only be made if determined to be in the "primary interest" of the government, or for the "convenience" of the agency. We held that because these were discretionary determinations, the FLRA correctly concluded that the proposal was negotiable. *Id.* at 1384–86. The section 5911(e) determinations here are similarly discretionary, and therefore subject to bargaining.

Treasury nevertheless asserts that it lacks the requisite discretion in this case because the on-site residency requirement is mandated by the Directive: if Treasury wishes to send employees to FLETC, it has no choice but to comply with its rules. This contention runs afoul of our decision in *Library of Congress v. FLRA,* 699 F.2d 1280 (D.C.Cir.1983). In that case, the Library argued that certain proposals were nonnegotiable because they involved alterations in the structure of a new building that are statutorily entrusted to the Architect of the Capitol. We held that although the Library had no authority to order the alterations, it did have discretion (exercised in the past) to recommend them to the Architect. We concluded, therefore, that the Library was required to bargain over the extent and content of any recommenda-

tions it might make concerning these disputed matters. *Id.* at 1286–90.

We see no basis for distinguishing the instant case. While the record does not reflect whether Treasury has made recommendations concerning FLETC's governance in the past, clearly Treasury is in a position to urge the FLETC Director to make the necessary exceptions for Customs Service employees. Nor is there any doubt that the FLETC Director is empowered to make such exceptions. *See* Directive at 3. Accordingly, Treasury must bargain over the exercise of this discretion.

### III. CONCLUSION

The FLRA reasonably determined that the proposals at issue conflict with neither a government-wide regulation nor federal law. Accordingly, Treasury's petition for review of this matter is denied, and the FLRA's cross-application for enforcement is granted.

*So ordered.*