UNITED STATES DEPARTMENT OF DEFENSE DEPARTMENT OF MILITARY AFFAIRS, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 91–1216.

United States Court of Appeals, District of Columbia Circuit.

Argued March 30, 1992.

Decided June 2, 1992.

Marleigh D. Dover, with whom Stuart M. Gerson, Asst. Atty. Gen. and Leonard Schaitman, Dept. of Justice, were on the brief, for petitioner.

Richard Zorn, with whom William E. Persina, Sol. and William R. Tobey, Deputy Sol., Federal Labor Relations Authority, were on the brief, for respondent.

Before WALD, EDWARDS and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

■ Under the Federal Service Labor–Management Relations Act, federal agencies are required to bargain with their employees' representatives over "conditions of employment." 5 U.S.C. § 7114(b)(2). "Conditions of employment," however, are defined to exclude "policies, practices, and matters ... specifically provided for by federal statute." *Id.* § 7103(a)(14)(C). That exclusion, along with 5 U.S.C. § 7117(a), which rejects as negotiable proposals that involve government-wide rules and regulations,[1] incorporates the principle that a federal agency cannot be required to negotiate over any proposal that is inconsistent with federal law. *See Department*

*of Treasury v. FLRA*, 873 F.2d 1473, 1476 (D.C.Cir.1989); *United States Dep't of Health and Human Servs. v. FLRA*, 858 F.2d 1278, 1283 (7th Cir.1988).

In this case, we consider whether a union bargaining proposal that would limit the manner in which a federal agency responds to requests for information under the Freedom of Information Act ("FOIA") is inconsistent with federal law and therefore nonnegotiable. We hold that the bargaining proposal is nonnegotiable as in violation of the FOIA and therefore grant the Department of Defense's petition for review.

## I. Background

During collective bargaining between the National Federation of Federal Employees, Local 1655 (the "Union") and the Department of Defense, Department of Military Affairs (the "Agency"), the Union submitted eight proposals for negotiation, five of which concerned the manner in which the Agency would respond to requests for information under the FOIA. The Agency refused to negotiate over any of the proposals and the Union appealed to the Federal Labor Relations Authority ("FLRA" or "Authority") pursuant to 5 U.S.C. § 7117(c). The FLRA agreed with the Agency that the Union's proposals were not negotiable, with one exception: Proposal 5. That proposal, the subject of this appeal, reads:

> Data/information that the Union could receive from an employee, does not relieve the Employer from providing that data/information to the Union.

The FLRA interpreted the proposal to mean that, if adopted, the Agency would be required "to provide to the Union information *regardless of whether* the information might also be available to the Union from the employee who is the subject of the information." *National Fed'n of Fed. Employees Local 1655 and U.S. Dep't of Defense Dep't of Military Affairs*, Deci-

---

**1.** 5 U.S.C. § 7117(a) provides that:
the duty to bargain in good faith shall, to the extent not inconsistent with any Federal law or any government-wide rule or regulation, extend to matters which are the subject of any rule or regulation only if the rule or regulation is not a government-wide rule or regulation.

sion and Order on Negotiability Issues (Mar. 12, 1991) [hereinafter "Decision and Order"] at 11 (emphasis supplied). "In other words," the Authority continued, "the proposal would simply preclude the Agency from asserting an 'alternative means' defense to a FOIA request." *Id.* So interpreted, the Authority concluded that the proposal was not inconsistent with any federal law and was therefore negotiable. *Id.* at 12. The Department of Defense challenges that ruling, arguing that the proposal *is* inconsistent with federal law, namely the FOIA, and is therefore not negotiable.

## II. DISCUSSION

### A. *Tax Analysts*

In justifying its conclusion that Proposal 5 is consistent with federal law, the Authority relies heavily on *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989), in which the Supreme Court ruled that the Department of Justice was required to make available under the FOIA copies of certain "unpublished" district court decisions in its case files despite the fact that those decisions were available on request from the clerks of the courts in which they were rendered. Although recognizing that the opinions were not protected by any of the nine enumerated exemptions to disclosure under the FOIA, *see* 5 U.S.C. § 552(b), the Department of Justice nonetheless argued that there was "nothing improper in directing a requester to the principal, public source of records." *Tax Analysts*, 492 U.S. at 151, 109 S.Ct. at 2851 (internal quotations omitted). The Court disagreed, however, stating that

> [i]f Congress had wished to codify an exemption for all publicly available materials, it knew perfectly well how to do so. It is not for us to add or detract from Congress' comprehensive scheme, which already balances, and protects all interests implicated by Executive Branch disclosure.

*Id.* at 152–53, 109 S.Ct. at 2852 (internal quotation omitted). Even though the FLRA did not refer to *Tax Analysts* in its Decision and Order, counsel for the FLRA argues that the FLRA's order is simply an "expression of the principle established in *Tax Analysts*." Brief for Respondent/Cross–Petitioner at 5.

 ██ The Authority's reliance on *Tax Analysts*, however, is misplaced. *Tax Analysts* stands for the proposition that the existence of an alternative source of information is not a *per se* defense to a request for information under the FOIA. However, as we discuss below, under the law of this circuit consideration of alternative sources of information is indeed one factor that agencies and reviewing courts may legitimately consider in determining whether privacy-implicating information must be disclosed under the FOIA. Because the Union's proposal would preclude consideration of that factor—the proposal, as interpreted in the FLRA's decision, would require disclosure *"regardless"* of the existence of alternative sources, Decision and Order at 11—it is inconsistent with this circuit's FOIA precedents.[2] As such, the

---

2. This was also the interpretation of the proposal advanced by counsel for the FLRA at oral argument.

> Counsel: There is no legal authority that holds that alternative means of obtaining data is a reason to withhold documents requested under the Freedom of Information Act.
>
> The Court: Well right there, right there, what you just said could have two meanings, and that's where I'm stuck here. I'm trying to figure out what the issue is. One meaning could be what I thought you were saying is that there is no law which says that an agency looking at a FOIA request can say, "we're not going to give that FOIA request because this is available from an employee.

> Now we'll go on and we'll treat it like any other FOIA request." Or, the second one would be the one that I think the government thinks that it may mean and that is, "we're going to look at this just like FOIA, regular FOIA requests to begin with, but whereas with other people we would, could look at the availability of the information elsewhere in an Exemption 6 balancing, we bound ourselves under the contract not to look at that factor in this particular proceeding. Which is it, one or two?
>
> Counsel: Well, this is probably a rare instance, but we concur with the Justice Department on that.
>
> The Court: Ok. I just was trying to get that clear, that's all.

Union's proposal is not negotiable.[3]

## B. *FOIA Exemption 6*

■ Exemption 6 of the FOIA excludes from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Incorporated in the "clearly unwarranted" language is the requirement for an agency "balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." *Department of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976) (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)); *see also FLRA v. United States Dep't of Treasury, Fin. Management Serv.*, 884 F.2d 1446, 1451 (D.C.Cir.1989), *cert. denied, American Fed'n of Gov't Employees v. United States Dep't of Health and Human Servs.*, 493 U.S. 1055, 110 S.Ct. 863, 107 L.Ed.2d 947 (1990); *Getman v. NLRB*, 450 F.2d 670, 674 n. 10 (D.C.Cir.1971). In making that balance, agencies and reviewing courts consider whether disclosure of the requested information would result in an invasion of privacy, and if so, the extent and seriousness of that invasion, as well as the extent to which disclosure would serve the public interest. *See, e.g., Campbell v. United States Civil Serv. Comm'n*, 539 F.2d 58 (10th Cir.1976); *see also Painting & Drywall Work Preservation Fund, Inc. v. United States Dep't of Hous. & Urban Dev.*, 936 F.2d 1300, 1302 (D.C.Cir.1991); *Rural Hous. Alliance v. United States Dep't of Agric.*, 498 F.2d 73, 77 (D.C.Cir. 1974); *Getman*, 450 F.2d at 674–76.

■ Under present circuit law, one factor agencies and courts consider on the public interest side of the equation is the extent to which there are alternative sources of information available that could serve the public interest in disclosure. Such inquiry proceeds on the logic that to the extent there are "alternative means" available to obtain the information, the need for enforced disclosure under the FOIA of privacy-implicating information is diminished. For example, in *Financial Management, supra*, we recognized that disclosure of the names and addresses of public employees "could provide leads for an investigative reporter seeking to ferret out what 'government is up to,'" but dis-

---

Counsel: We simply believe that no court has ever held that alternative sources of obtaining information is a factor to be—
The Court: Well, what's *Drywall*, what's our *Drywall* and the other case—
Counsel: Well, *Painting & Drywall* and *Department of Treasury [Financial Management*] are totally different cases and reliance on those is misplaced. Those cases concerned names and home addresses; the court found in that case that the public interest was lessened somehow because of available alternative means of communication. This case does not deal with communication it deals with the data itself. So we don't believe there's any relationship between the two cases and indeed no court has ever held that alternative sources of obtaining the information is a valid consideration in determining whether to release the information. We believe that that's consistent with, as we stated in our brief, that's consistent with *Tax Analysts*, which squarely held that alternative sources of obtaining data is not a consideration, it's not one of the exemptions, and it's not a consideration in determining whether to release information....

3. Although one plausible reading of the FLRA's interpretation of the Union's proposal, discussed at oral argument, might be that it was intended merely to preclude the Agency from rejecting a FOIA request solely on the basis of availability of the information elsewhere and not to prevent the Agency from considering availability in the context of a FOIA Exemption 6 analysis, the FLRA at oral argument disavowed such an interpretation. *See supra* note 2. Obviously we need not pass on the negotiability of the disavowed interpretation. We note, however, that in other cases where a union proposal seeks only compliance with existing law, the FLRA has specifically described it as such. *See, e.g., American Fed'n of Gov't Employees and Dep't of the Navy, U.S. Marine Corps*, 35 F.L.R.A. 108, 111 (1990) (stating that "the proposal requires only that the Agency comply with applicable legal requirements" in taking adverse actions against employees); *National Treasury Employees Union and IRS*, 3 F.L.R.A. 693, 696 (1980) (noting that the "union's stated intent is to incorporate ... two provisions of law into the negotiated proposal and to enforce them through the negotiated grievance procedure"). The FLRA made no such characterization here.

counted the value of that disclosure, albeit only slightly, because an investigative reporter would have "an alternative means of access" to federal employees in the form of "face-to-face conversation attained simply by following other leads and roaming government hallways." 884 F.2d at 1452.[4] For similar reasons, we discounted the public interest in disclosure of the names and addresses of construction workers on HUD-assisted construction projects, *see Painting and Drywall*, 936 F.2d at 1303, as well as the public interest in disclosure of the names, duty stations, and locations of federal workers who have received outstanding or commendable work evaluations, *FLRA v. United States Dep't of Commerce, Nat'l Oceanic & Atmospheric Admin.*, 962 F.2d 1055, 1060 n. 2 (D.C.Cir. 1992) (noting the availability of alternative means of obtaining information by distributing questionnaires or conducting personal interviews). *See also Ripskis v. Dept. of Hous. and Urban Development*, 746 F.2d

1, 3–4 (D.C.Cir.1984) (per curiam) (finding that public interest can be advanced by means short of disclosure); *Rural Housing*, 498 F.2d 73, 77 (remanding for consideration of whether alternative sources of information might be available); *Getman*, 450 F.2d at 676–77 (noting that FOIA requesters have no other source for obtaining the requested information).

■ This line of authority belies the notion that *Tax Analysts* stands for the proposition that consideration of alternative means of obtaining data has no place under the FOIA. While certainly not a *per se* defense to a FOIA request, consideration of "alternative means" *is* an aspect of the balancing of interests conducted pursuant to Exemption 6 of the FOIA.[5] The Union's attempt, endorsed by the FLRA, to take that factor out of the equation is thus inconsistent with law and, as such, nonnegotiable.[6]

**4.** We note, however, that the holding of *Financial Management,* that federal agencies need not disclose to unions the names and addresses of bargaining unit employees, has not won universal approval. While the First and Second Circuits have followed *Financial Management, see FLRA v. United States Dep't of Veterans Affairs,* 958 F.2d 503 (2d Cir.1992); *FLRA v. United States Dep't of the Navy,* 941 F.2d 49 (1st Cir. 1991), the Ninth Circuit has ruled the opposite, *see FLRA v. United States Dep't of the Navy,* 958 F.2d 1490 (9th Cir.1992).

**5.** When questioned at argument about explicit statements in *Financial Management* and *Painting and Drywall* that "alternative means" analysis *is* a factor to be considered in the Exemption 6 balance, counsel for the FLRA attempted to distinguish those cases as employing an inquiry into whether there were alternative means of *communication* with bargaining unit employees as opposed to the instant case in which the debate focused on alternative means of *obtaining the data requested. See supra* note 2.

Counsel did not elaborate on the content or significance of that alleged distinction, nor did he direct us to any authority to support the proposition that there is a substantive distinction to be drawn between alternative means of communication and alternative means of obtaining information. The distinction strikes us as one of semantics, not substance, and, in any event, there are plenty of cases that have expressly framed the FOIA inquiry in terms of alternative sources of information or alternative means of obtaining data. *See, e.g., FLRA v. United States Dep't of Commerce, Nat'l Oceanic*

*& Atmospheric Admin.,* 962 F.2d at 1060 n. 2 (D.C.Cir.1992) (union has "alternative means of obtaining rating information"); *Rural Housing,* 498 F.2d 73, 77 (remand for consideration of whether "alternative sources of information" might be available); *FLRA v. United States Dep't of Navy,* 958 F.2d 1490, 1494 (9th Cir.1992) (describing the fourth factor considered in Exemption 6 cases as "the availability of any alternative means of obtaining the requested information").

**6.** In ruling that a union's effort to limit the factors that an agency can consider in evaluating requests for information under the FOIA is nonnegotiable, we are not unmindful of the principle articulated in *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), that the FOIA exemptions *permit* an agency to withhold information, but do not *compel* it do so. *Id.* at 293, 99 S.Ct. at 1713. The FLRA does not, however, make the argument that under *Chrysler* an agency may disclose more personal information about its employees than that which is mandated by the FOIA, and the Union here was simply asking the Agency to agree to do so.

Such an argument would in any case have encountered hard sledding because while the FOIA itself is not a withholding statute, *Chrysler* recognized that withholding of information may be required by another statutory mandate. *Id.* 441 U.S. at 294–316, 99 S.Ct. at 1713–25. The Privacy Act is such a statute. Under the Privacy Act, a federal agency is generally prohibited from disclosing personal information about its

### III. CONCLUSION

The FLRA has erroneously ordered the Department of Defense to bargain over a proposal that is inconsistent with federal law. The Agency's petition for review is granted and the FLRA's cross-petition for enforcement of its order is denied.

*It is so ordered.*

employees without their consent. 5 U.S.C. § 552a(b). There is an exception to that broad prohibition, however, for information that "would be required" to be disclosed under the FOIA. *Id.* § 552a(b)(2). Whereas a federal agency typically can disclose *more* information than that required to be disclosed under the FOIA, *Chrysler,* 441 U.S. at 293, 99 S.Ct. at 1713, in responding to a FOIA request for personal information about its employees, a federal agency can only disclose information that it would be *required* to disclose under the FOIA. For an agency to do otherwise would violate the prohibition on disclosure in the Privacy Act.