885 F.2d 911
 132 L.R.R.M. (BNA) 2492, 280 U.S.App.D.C. 289,
1989 O.S.H.D. (CCH) P 28,663
 DEPARTMENT OF HEALTH AND HUMAN SERVICES, INDIAN HEALTH
SERVICE, OKLAHOMA CITY, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
The National Federation of Federal Employees, Intervenor.
 No. 88-1304.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 30, 1989.
Decided Sept. 15, 1989.
 
 Robert D. Kamenshine, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen. and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on the brief, for petitioner.
 Irene M. Solet, Washington, D.C., also entered an appearance, for petitioner.
 James F. Blandford, Atty., Federal Labor Relations Authority, with whom William E. Persina, Acting Sol. and Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.
 Ruth E. Peters, Washington, D.C., also entered an appearance, for respondent.
 
 
 1
 H. Stephen Gordon, Gen. Counsel, Nat. Federation of Federal Employees, Alice L. Bodley, Deputy Gen. Counsel, Nat. Federation of Federal Employees, and Anne L. Morgan, Atty., Nat. Federation of Federal Employees, Washington, D.C., were on the brief, for intervenor.
 
 
 2
 Bruce P. Heppen, Washington, D.C., also entered an appearance, for intervenor.
 
 
 3
 Before WALD, Chief Judge, MIKVA, Circuit Judge, and HAROLD H. GREENE,* District Judge.
 
 
 4
 Opinion for the Court filed by District Judge HAROLD H. GREENE.
 
 HAROLD H. GREENE, District Judge:
 
 5
 This case involves a conflict between the authority of a federal agency unilaterally to decree a smoking ban on premises occupied by its employees while at work and its duty to engage in collective bargaining with these employees. The Federal Labor Relations Authority (FLRA) determined that the agency's imposition of the ban without prior collective bargaining constituted an unfair labor practice. The matter is here on a petition for review of that determination.
 
 
 6
 * The Indian Health Service in Oklahoma City, an agency of the Department of Health and Human Services, Public Health Service, Health Resources and Services Administration, Oklahoma City Area, Oklahoma (hereinafter agency or IHS) decided in January 1985 to establish an areawide ban on smoking, and it later implemented that policy at its five Oklahoma City facilities. Most particularly at issue here, because the FLRA explicitly addressed implementation only there, is the W.W. Hastings Indian Hospital in Oklahoma City.
 
 
 7
 In the fall of 1985, the Oklahoma Area Indian Health Service Council, National Federation of Federal Employees (Union),[1] wrote to the IHS, requesting negotiations on the smoke-free environment policy, preferably on the substance of the policy or, if that were not permissible under applicable law, on its impact and implementation. The parties met, and ultimately the Union presented four proposals as alternatives to the IHS total smoking ban. The first would have expressed a recognition of the rights of visitors and workers to a reasonably smoke-free environment, and it would also have acknowledged the rights of smokers, provided that the exercise of these rights did not cause discomfort or unreasonable annoyance to nonsmokers; the second would have required IHS to designate adequately ventilated smoking areas at each facility; the third would have established a labor-management committee at each facility to consider the implementation of a new tobacco usage policy; and the fourth would have delayed the implementation of any new smoking policy until January 1 of the following year.[2] After further discussions, IHS stated that it considered the four proposals to be non-negotiable, and on October 7, 1985 it implemented its own smoke-free policy at the hospital and somewhat later at other facilities under its control. As a result, employees are no longer allowed to smoke anywhere within the particular facility but are required to go outside if they wish to smoke.
 
 
 8
 On December 16, 1985, the Union filed an unfair labor practice charge against IHS, and the FLRA General Counsel issued a complaint charging the agency with violating 5 U.S.C. Sec. 7116(a)(1), (a)(5), of the Federal Service Labor-Management Relations Statute (Statute). On July 23, 1987, an administrative law judge issued a decision in favor of IHS, but on exceptions filed by the General Counsel, the FLRA reversed, holding that there had been no showing how the Union's proposals interfered with the agency's purpose in establishing the smoking ban. The FLRA acknowledged that smoking could have a deleterious effect, but it further concluded that IHS had not shown that without a total ban it would not be able to achieve its objective of promoting American Indian health. It followed, according to the FLRA, that the Union's proposals regarding the IHS tobacco usage policy were negotiable, and that the agency had committed an unfair labor practice by refusing to negotiate with respect thereto. IHS filed a petition for review with this Court; the FLRA cross-petitioned for enforcement of its order; and the Union moved for and was permitted to intervene.
 
 II
 
 9
 The Statute requires federal agencies to bargain in good faith with employees' representatives over "conditions of employment" which are broadly defined to include "personnel policies, practices, and matters ... affecting working conditions." 5 U.S.C. Sec. 7103(a)(14). Refusal to bargain over such matters constitutes an unfair labor practice. 5 U.S.C. Sec. 7116(a)(1), (a)(5). Smoking policy proposals plainly involve conditions of employment,[3] and they are therefore subject to negotiations between an agency and a labor union representing the employees, unless the particular proposals are in conflict with management rights.
 
 
 10
 On that issue, the critical provision is section 7106(b)(1) of the Statute. That section exempts from the duty to bargain decisions concerning "the technology, methods, and means of performing work." With respect to decisions concerning these subjects, as we stated in American Federation of Government Employees, AFL-CIO, Local 2441 v. FLRA, 864 F.2d 178, 180 (D.C.Cir.1988) (Local 2441 ), an agency is permitted, but not required, to negotiate with a labor organization.[4] Here, as indicated, the IHS elected not to negotiate, and it was entitled to be sustained with respect to that refusal if the Union proposal interfered with the right of management pursuant to section 7106(b)(1) to determine the technology, methods, and means by which work is performed.
 
 
 11
 The FLRA has consistently employed a two-part test to determine whether a proposal concerning a condition of employment interferes with that management prerogative. In order to sustain such a claim, an employer agency must show, first, "the technological relationship of the proposal to accomplishing or furthering the performance of the agency's work," and second, "how the proposal would interfere with the purpose for which the technology was adopted." American Federation of Government Employees, AFL-CIO, National Council of Social Security Field Office Locals and Department of Health and Human Services, Social Security Administration, 24 F.L.R.A. 842, 846-47 (1986); American Federation of State, County and Municipal Employees, AFL-CIO, Local 2477 and Library of Congress, Washington, D.C., 7 F.L.R.A. 578, 584 (1982),enforced as to other matters sub nom. Library of Congress v. F.L.R.A., 699 F.2d 1280 (D.C.Cir.1983). In other decisions, when the FLRA was presented with the question whether a proposal interfered specifically with the methods and means, rather than the technology,[5] of performing an agency's work, it has required the employer agency to show (1) a direct and integral relationship between the particular method or means the agency chose for its use and that agency's mission,[6] and (2) a direct interference by the proposal with the mission-related purpose for which the agency established such methods or means. See generally, Local 2441, 864 F.2d at 180-182 (describing FLRA's two-prong test); see also, National Treasury Employees Union and U.S. Customs Service, Region VIII, 2 F.L.R.A. 255, 260-61 (1979).
 
 
 12
 Essentially, these tests require the agency to demonstrate that its choice of policy or practice is related to its mission, and that the proposal at issue would interfere with that purpose. Under any formulation, therefore, the first part of the test focuses on the agency--what it is doing and is attempting to accomplish--and the second part examines the union proposal--whether and how that proposal would interfere with the agency's basic objectives. Thus, we have previously explained that
 
 
 13
 More disruptive adjustments to agency policy have been held to be outside the agency's duty to bargain, on grounds of 'direct interference.' And, not surprisingly, the [FLRA] has held consistently that a union proposal to abolish an agency policy or render it merely voluntary would constitute direct interference and thus falls outside the duty to bargain.
 
 
 14
 Local 2441, 864 F.2d at 182 (citations omitted).
 
 
 15
 In its decision in the instant case, the FLRA did not find that the agency failed the first part of the test; it did not even address that issue. In any event, it could hardly be contended that the no-smoking rule is not directly and integrally related to the agency's purpose. The IHS is concerned with the advancement of the health care of American Indians, and the Indian Health Care Improvement Act, 25 U.S.C. Sec. 1601 et seq., explicitly charges the agency with advancing the health of American Indians.[7] In the execution of these objectives, the IHS administers a national program for improving the health of approximately 950,000 Indians. JA 2. And smoking is clearly inimical to health. See notes 10 and 11 infra. There can thus be no question but that the IHS passes the first part of the test for compliance with the Federal Service Labor-Management Relations Statute, and the FLRA does not seriously argue to the contrary in this Court.
 
 
 16
 The key issue, then, is whether the Union's proposals would interfere with the advancement by IHS of the health status of American Indians, and, more particularly in light of the substance of those proposals, whether they would interfere with the legitimate IHS objectives regarding smoking on the hospital premises.[8]III
 
 
 17
 On that issue, it is appropriate first to recall the standard by which the Court reviews FLRA decisions. As is true of the review of other types of agency action, decisions of the FLRA may be set aside only if arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. Secs. 7123(c) and 706(2)(A); NTEU v. FLRA, 826 F.2d 114, 121 (D.C.Cir.1987); EEOC v. FLRA, 744 F.2d 842, 847 (D.C.Cir.1984), cert. dismissed, 476 U.S. 19, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986). Moreover, the Court must apply the usual Chevron standard with respect to the FLRA's construction of its enabling act, Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984),[9] that is, "considerable weight should be accorded to an [agency's] construction of a statutory scheme it is entrusted to administer," and the Court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Finally, if the FLRA's construction is "reasonably defensible" and if its findings of fact are supported by substantial evidence, its decision must be upheld. Local 2441, 864 F.2d at 184; American Federation of Government Employees, Local 3748 v. FLRA, 797 F.2d 612, 615 (8th Cir.1986); see also, NLRB, Local 6 v. FLRA, 842 F.2d 483, 486 (D.C.Cir.1988), Department of Defense v. FLRA, 659 F.2d 1140, 1153 n. 74 (D.C.Cir.1981), cert. denied, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). These rules applicable to the review of government action are not altered merely because one of the parties to the dispute is also a governmental agency; none of the precedents suggests otherwise, and the IHS does not claim a special exemption.
 
 
 18
 We now examine the application of the general legal principles governing the FLRA's responsibilities to the particular factual situation involved in this case.
 
 
 19
 As indicated above, the IHS operates, among other things, a hospital for American Indians, and it is clear that, in the exercise of its responsibility for operating the hospital, as for its other functions, it has a mandate from the Congress to advance the health of American Indians. It may also be taken for granted, and the FLRA does not dispute, that the smoking of tobacco is detrimental not only to the person who smokes,[10] but also to those who are exposed to passive or secondary smoke.[11] Finally, it is true that, as the agency asserts, it was "completely sensible for IHS as a means of advancing its health care mission ... to seek entirely to eliminate a health hazard to patients within its own health care facilities." Brief for Petitioner at 25.[12]
 
 
 20
 Where the IHS errs is in its contention that, inasmuch as the FLRA required bargaining regarding the Union's several proposals, it must have concluded that such bargaining is required "unless the smoking ban was the sole means for accomplishing the health improvement objective." Id. (emphasis in original). That line of reasoning misconceives the rationale for the FLRA decision. The Authority did not hold that bargaining is required unless the means chosen by an agency are the only ones suited for accomplishment of that agency's purpose, but that bargaining is required if the alternative proposed by the labor union does not improperly interfere with that purpose.[13] As explained above, that is an entirely appropriate standard that comports in every respect with the statute and the precedents.
 
 
 21
 The question here, then, is whether the Union's proposals--in particular its proposal for the establishment of well-ventilated rooms where employees may smoke during breaks in their work schedules--interfere with the purpose underlying the smoking restrictions, that is, the furthering of the health of the Indian people.
 
 
 22
 In confronting that question, the IHS argues that, when the FLRA determined that the Union's proposals would not directly interfere with the agency's mission, it was acting contrary to its prior application of the direct interference standard and of court decisions sustaining that application.[14] In support of its contention, IHS relies on our recent decision upholding a FLRA determination that a labor union's proposal to eliminate a Bureau of Prisons dress code requirement directly interfered with that Bureau's purpose, Local 2441, 864 F.2d at 187, and on the decisions of four other courts of appeals upholding FLRA determinations that National Guard decisions to require military uniforms constituted non-negotiable "methods and means" of performing work, New York Council, Ass'n. of Civilian Technicians v. FLRA, 757 F.2d 502, 509-10 (2d Cir.), cert. denied, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985); AFGE, Local 3013, AFL-CIO v. F.L.R.A., 762 F.2d 183, 184 (1st Cir.1985); NAGE, Locals R5-91, R5-107, R5-120 v. F.L.R.A., 771 F.2d 1449, 1452-53 (11th Cir.1985); AFGE, Local 2986, AFL-CIO v. FLRA, 775 F.2d 1022, 1026 (9th Cir.1985).[15]
 
 
 23
 However, these precedents do not support the agency's position here. What they and other precedents in the uniform or dress code area and elsewhere demonstrate is that, if a labor union proposal would completely eliminate, vitiate, or make optional an agency's requirements, it is not subject to bargaining.[16] By contrast, proposals which do not interfere with the agency's purpose are not beyond the scope of collective bargaining even if they differ in details from the methods and means adopted by that agency.[17]
 
 
 24
 In the latter category are such matters as a union proposal providing for grooming standards which vary from those adopted by the Immigration and Naturalization Service for the purpose of ready identification of its personnel,[18] and a proposal to permit firefighters to wear teeshirts and ballcaps with agency insignia instead of the full firefighters' uniform.[19] Particularly instructive in this regard is American Federation of Government Employees, Local 217 and Veterans Administration Medical Center, Augusta, Georgia, 21 F.L.R.A. 62, 67 (1986). In that case, the FLRA concluded that, since the requirement of the wearing of a uniform facilitated the accomplishment of the agency's mission because it allowed for ready identification of agency employees, a union proposal which would have made the wearing of the uniform optional was not negotiable. However, in the same case a proposal which only sought to ensure that the uniforms would be suitable for the climatic conditions under which the employees must work was held to be negotiable since it did not interfere with the identification function.
 
 
 25
 One conclusion to be drawn from these and similar precedents is that the distinction, with respect to the statute, between those union proposals which do and those which do not interfere with the purpose for which an agency's technology, methods, and means were adopted, is not always simple or self-evident but may be complex and involve both expertise and judgment. The decision may depend, inter alia, upon the degree of departure from agency policy implicit in a particular union proposal, the type of agency involved, and the agency's specific needs and requirements. Thus, as we have seen, a uniform requirement adopted by the National Guard or a dress code prescribed by the Bureau of Prisons may be regarded as integral to the mission of these agencies in every respect, while a dress code applicable to the INS, a fire department, or a Veterans Administration hospital may be subject to collective bargaining with respect to details. Because of the need for expertise and judgment, the drawing of the lines between negotiable and non-negotiable union proposals is ultimately within the jurisdiction of the FLRA, which has been vested by Congress with administration of the Statute, whose decision must be sustained absent arbitrary action.
 
 IV
 
 26
 In this case, the FLRA found that there was "nothing in the record which indicates that the proposals would interfere with the Agency's objective." JA 27. That conclusion can hardly be characterized as arbitrary or capricious.
 
 
 27
 One of the Union proposals, as noted above, calls for the establishment of well-ventilated rooms to be used by employees for smoking during scheduled breaks. The number, size, and location of these rooms and the length and frequency of the breaks would be left to local negotiation.[20] Moreover, the designated areas would be for employees only, so that patients and visitors could not observe smoking by the employees.[21]
 
 
 28
 The Union proposal[22] met both of the objectives sought to be achieved by the IHS: it would remove the employees who smoke from areas where other employees and patients could be harmed by exposure to passive or secondary smoke, and by removing smokers from their sight it would not interfere with the agency's purpose to set a good example for the Indian patients and their visitors. Indeed, in one respect, the establishment of designated smoking areas within the facility could actually be regarded as preferable to the IHS' own plan, in terms of the agency's announced objectives. As the record shows, JA 97-98, 186-87, when employees are required to step outside of either the facility's main entrance or its emergency entrance in order to smoke--as they must do now--both patients and visitors can see them smoke, and the educational value of the no-smoking policy is to that extent undermined.[23] At the very least, however, the Union's proposals could not simply be labeled non-negotiable on the theory that, if implemented, they would directly and improperly interfere with the agency's mission and purpose.
 
 
 29
 For these reasons, we find that the exercise of authority by the Federal Labor Relations Authority in this case was neither arbitrary nor capricious but entirely reasonable. Accordingly, the petition for review is denied, and the Authority's cross-application for enforcement is granted.
 
 
 30
 So ordered.
 
 
 
 *
 Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. Sec. 292(a)
 
 
 [1]
 The Union is the exclusive bargaining representative for approximately 1,000 employees at the five facilities at which the smoking ban was implemented
 
 
 [2]
 Joint Appendix (JA) 7-8. There was some indication that the IHS was prepared to accept an extension period implied by that proposal if it were reduced to forty-five days, but ultimately no agreement was reached on that issue. JA 9
 
 
 [3]
 National Treasury Employees Union, Chapter 250 and Department of Health and Human Services, Family Support Administration, Washington, D.C., 33 F.L.R.A. 61, 68 (1988); National Treasury Employees Union and Internal Revenue Service, Los Angeles District, 32 F.L.R.A. 182, 187 (1988); American Federation of Government Employees, Local 2324, AFL-CIO and Department of the Army Headquarters, 1st Infantry Division, Fort Riley, Kansas, 27 F.L.R.A. 33, 34 (1987); National Association of Government Employees, Local R14-32 and Department of the Army, Fort Leonard Wood, Missouri (Ft. Leonard Wood), 26 F.L.R.A. 593, 595-96 (1987)
 
 
 [4]
 Other subjects are reversed to the agencies' exclusive authority, and they are accordingly excluded from negotiations. See 5 U.S.C. Sec. 7106(a); Bureau of Alcohol, Tobacco and Firearms v. FLRA, 464 U.S. 89, 92, 104 S.Ct. 439, 441, 78 L.Ed.2d 195 (1983)
 
 
 [5]
 In the instant case, the IHS did not specify whether in its view the Union's proposals interfered with the "technology" or the "methods and means" of performing work
 
 
 [6]
 Quoting the FLRA, this Court has stated that the "means of performing work" encompasses "anything used to attain or make more likely the attainment of a desired end, and ... refers to any 'instrumentality, including an agent, tool, device, measure, plan or policy used by the agency for the accomplishing or furthering of the performance of its work.' " Local 2441, at 181 (quoting Division of Military and Naval Affairs, State of New York, 15 F.L.R.A. 288, 291 (1984)); National Treasury Employees Union, 2 F.L.R.A. 255, 258 (1979), aff'd sub nom. ACT, 757 F.2d 502 (2d Cir.), cert. denied, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985))
 
 
 [7]
 The preamble to the Act states in pertinent part that "[t]he Congress hereby declares that it is the policy of this Nation, in fulfillment of its special responsibilities and legal obligation to the American Indian people, to meet the national goal of providing the highest possible health status to Indians...." 25 U.S.C. Sec. 1602
 
 
 [8]
 The agency suggests, almost in passing, that this prong of the test may be invalid, stating that this requirement "is problematic and has not been endorsed in any court of appeals decision." Petitioner's Reply Brief at 5. However, even at that, the agency has not mounted a serious challenge to this part of the test; in fact, it did not address it until it filed its reply brief, and even there, its arguments address primarily the FLRA's application of the test rather than its validity. In Local 2441, we suggested several possible statutory bases for the direct interference part of the Authority's two-prong test. 864 F.2d at 181 n. 2
 
 
 [9]
 See also, AFGE v. FLRA, 850 F.2d 782, 785 (D.C.Cir.1988)
 
 
 [10]
 The Surgeon General of the United States has issued various reports concerning the serious adverse health effects of smoking. JA 39-41 (testimony of Dr. Everette Rhoades, an Assistant Surgeon General of the Public Health Service and director of the IHS)
 
 
 [11]
 Dr. Rhoades also testified in this case that reports by the Surgeon General in 1982 and 1985 emphasized "the continuing build-up of scientific evidence that smoking cigarettes is harmful to those who smoke and harmful to those who don't smoke." JA 40-41
 
 
 [12]
 The FLRA assumed, without deciding, that the IHS' objective of totally restricting smoking in its facilities is related to the "technology, methods, and means of performing work." JA 27
 
 
 [13]
 IHS relies on language in the FLRA decision to the effect that the agency had not shown that "without a total ban on smoking in its facilities it will be unable to achieve its objective of promoting Indian health" (Brief for Petitioner at 11). But that statement, in context, expresses no more than the point that, because the Union's proposals were also consistent with the purpose of the smoking restrictions, a total ban was not the exclusive means to that objective
 
 
 [14]
 Since the FLRA did not conclude that the IHS failed to pass the first part of the test, much of the agency's argument that the Authority abandoned the "direct and integral relationship" standard, substituting therefor a requirement that the IHS must demonstrate that no other approach would enable it to achieve its health objectives for its Indian patients (Brief for Petitioners at 15-20) is beside the point. The "direct and integral relationship" standard relates to the first prong of the two-part test for compliance with the Statute, the prong that IHS clearly satisfies. Only the Union intervenor argues, albeit without great force, that a smoking ban does not further the agency's mission. Brief for Intervenor at 17-18. The contested issue, as discussed below, is whether the IHS position satisfies the second prong
 
 
 [15]
 The agency also cites a variety of other decisions, e.g., NAGE, Local R14-32 and Department of the Army, Fort Leonard Wood, Missouri, 26 F.L.R.A. 593 (1987); NTEU and HHS, 33 F.L.R.A. 61 (1988); NTEU and IRS, Los Angeles District, 32 F.L.R.A. 182 (1988), petition for review filed sub nom. IRS, Los Angeles District v. F.L.R.A., No. 88-1550 (D.C.Cir. July 29, 1988) criticizing the method by which the decision makers arrived at their conclusions, see note 8 supra. However, in none of these instances did the employing agency prevail
 
 
 [16]
 The Second Circuit thus held in New York Council that
 It was not arbitrary for the Authority to consider it self-evident and unworthy of discussion that standard civilian attire would not 'foster military discipline, promote uniformity, encourage esprit de corps, increase the readiness of the military forces for early deployment and enhance identification of the National Guard as a military organization.'
 757 F.2d at 511. None of these factors is applicable here, whether directly nor by analogy.
 
 
 [17]
 As we stated in Local 2441, "[i]n applying the 'direct interference' test, the Authority has required agencies to bargain over union proposals that would tinker with agency policy without defeating its purpose." 864 F.2d at 182
 
 
 [18]
 American Federation of Government Employees, AFL-CIO, National Immigration and Naturalization Service Council, 8 F.L.R.A. 347, 352-53 (1982), reversed as to other matters sub nom. U.S. Department of Justice, Immigration and Naturalization Service v. FLRA, 709 F.2d 724 (D.C.Cir.1983)
 
 
 [19]
 American Federation of Government Employees, 25 F.L.R.A. 1028, 1030-31 (1987)
 
 
 [20]
 There was conflicting evidence concerning the effects of a ventilation system on the isolation of smoke confined to a single room. While Dr. Leland Fairbanks, Director of the IHS' Office of Continuing Education, suggested at one point that it was not possible by means of ventilation completely to eliminate side-stream smoke, JA 91, he has also stated that such smoke could be eliminated if the IHS was prepared to expend the necessary funds. JA 88
 
 
 [21]
 Dr. Leland Fairbanks, Director of the IHS' Office of Continuing Education, testified that the agency did not want patients to see employees smoking. JA 97
 
 
 [22]
 Beyond that, the Union even offered to test the ventilated smoking areas for ninety days, and it offered further that, if this method was not effective in achieving a smoke-free environment, it would accept the IHS's own policy. JA 22
 
 
 [23]
 Moreover, if nurses and other hospital employees went outside to smoke, it might be difficult to reach them in a timely manner during an emergency. JA 188-89