**DEPARTMENT OF HEALTH AND HUMAN SERVICES FAMILY SUPPORT ADMINISTRATION, Washington, D.C., Department of Health and Human Services Headquarters Office, Washington, D.C. and Department of Health and Human Services Region VII, Kansas City, Missouri, Petitioners,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**National Treasury Employees Union, Intervenor.**

**No. 88–1867.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 1990.

Decided Nov. 30, 1990.

---

Michael J. Astrue, Gen. Counsel, Dept. of Health and Human Services, with whom Stuart M. Gerson, Asst. Atty. Gen., U.S. Dept. of Justice, David V. Foster, Sp. Asst. to the Gen. Counsel, and Barbara A. Myers, Atty., Dept. of Health and Human Services, were on the brief, for petitioners.

James F. Blandford, Atty., Federal Labor Relations Authority, with whom William E. Persina, Sol., and Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, were on the brief, for respondent.

David F. Klein, Asst. Counsel, Nat. Treasury Employees Union, with whom Gregory O'Duden and Elaine Kaplan were on the brief, for intervenor. Lucinda A. Riley also entered an appearance for intervenor.

Before: SILBERMAN, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The Department of Health and Human Services seeks review of a decision by the Federal Labor Relations Authority rejecting HHS's assertion of a compelling need for an agency-wide ban on smoking within HHS facilities and ordering HHS to bargain with local chapters of the National Treasury Employees Union (NTEU) regarding the agency's smoking regulations. The FLRA asks this court to enforce its bargaining order. We reject HHS's petition for review and grant the FLRA's cross-petition for enforcement of its bargaining order.

I.

In May of 1987 HHS announced that it was creating a smoke-free working environment in all HHS facilities and in August of that year it issued personnel regulations implementing the smoking ban. Three local chapters of the NTEU attempted to negotiate over the policy, presenting proposals to accommodate smokers by establishing designated smoking areas within HHS facilities. Their proposals were consistent with the government-wide regulation issued by the General Services Administration (GSA), which calls for agencies to

accommodate the needs of smokers by creating "smoking areas" that "do not impinge on the health of those who do not smoke," 41 C.F.R. § 101–20.105–3(a)(2) (1990), and instructs agencies to honor their collective bargaining obligations, 41 C.F.R. § 101–20.105–3(g), but allows an agency, in its discretion, to implement more stringent smoking regulations, 41 C.F.R. § 101–20.105–3(a)(3). HHS maintained, however, that the smoking ban was nonnegotiable under Title VII of the Civil Service Reform Act of 1978, commonly known as the Federal Service Labor–Management Relations Act, 5 U.S.C. § 7101 *et seq.* (1988) (FSLMRA), because it fell within the compelling need exception to the duty to bargain created by 5 U.S.C. § 7117(a)(2). Each of the three bargaining units filed negotiability appeals with the FLRA pursuant to 5 U.S.C. § 7117(c). The appeals were consolidated for decision.

HHS argued before the Authority that a complete ban on smoking in the workplace was essential to the performance of its mission to educate the public about the dangers of smoking. The agency claimed that it could not effectively persuade private-sector employers to create smoke-free work environments if it did not do so itself. Its credibility would be jeopardized, HHS claimed, unless it were free to set an example by creating for its own employees the healthiest working environment possible without being subject to the lengthy and uncertain collective bargaining process. Moreover, in light of the Surgeon General's 1986 report on the harmful effects of environmental tobacco smoke (ETS) and the difficulties of confining ETS so as not to endanger nonsmokers, such a ban was, in the agency's view, necessary to protect employees' health.

The FLRA determined that HHS had failed to meet its burden of demonstrating that a smoking ban in all HHS facilities was essential to the agency's mission within the meaning of the statute and its implementing regulations. *See National Treasury Employees Union and Dep't of Health and Human Servs.*, 33 F.L.R.A. 61 (1988). The Authority thought that a complete smoke-free working environment in all HHS buildings, while helpful or desirable as an aid to HHS's advocacy role, was not essential to the agency's mission of "performing research and informing the public on the hazards of smoking." *Id.* at 68. And although the Secretary submitted materials to the Authority concerning the health hazards smoking causes its employees to show that "nothing less than a policy of a smoke-free environment can assure adequate protection of the occupants in Department-controlled building space," Agency Response to Negotiability Determination at 18–19, J.A. at 63–64, it would appear that this evidence was submitted merely to buttress the agency's claim that its credibility as an advocate would be undermined if it did not ban smoking completely in light of its knowledge of the harmful effect of smoking on its own employees.

## II.

In light of the government-wide GSA regulation, which permits smoking in designated areas in government buildings (and which also recognizes the collective bargaining obligations of government agencies on the question), HHS's position is of necessity focused on its unique governmental role as an advocate for policies throughout the country that the government itself has not yet accepted. It is primarily on this basis that HHS sought to establish the "compelling need" to ban smoking completely which under § 7117(a)(2) would permit it to avoid collective bargaining on the issue. HHS argues to us, as it did before the FLRA, that it cannot perform its governmental mission (as properly understood) without a total smoking ban. As the FLRA, however, found that HHS could perform its mission without such a ban and that no "compelling need" therefore existed, the burden of HHS's argument in this court is that HHS, not the FLRA, is the expert on the articulation and performance of HHS's mission, and that it is consequently to HHS, and not to the FLRA, that this court should defer as to the nature and degree of the need for the regulation.

■ The difficulty with this argument is that it proves too much. If the FLRA and this court must defer to an agency's reasons for asserting a "compelling need" for a regulation that preempts collective bargaining, the subject matter reserved to collective bargaining would rather quickly shrink.[1] It is perfectly clear that Congress, by delegating to the FLRA (the adjudicatory neutral in the collective bargaining framework) the responsibility to determine when an agency's need was "compelling," understood that point full well. We therefore have repeatedly held that we must defer to the FLRA's interpretation of its own statute as against competing executive branch interpretations. *See, e.g., HHS, Indian Health Serv. v. FLRA*, 885 F.2d 911, 915 (D.C.Cir.1989); *EEOC v. FLRA*, 744 F.2d 842, 847 (D.C.Cir.1984) *cert. dismissed*, 476 U.S. 19, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986); *Department of Defense v. FLRA*, 659 F.2d 1140, 1153 (D.C.Cir. 1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). Although the FLRA's expertise in labor relations is part of the basis for that deference, the more important consideration is that it is to the FLRA that the Congress delegated the mixed legal-policy function of applying the statute. "Because of the need for expertise *and judgment,* the drawing of the lines between negotiable and non-negotiable union proposals is ultimately within the jurisdiction of the FLRA ... whose decision must be sustained absent arbitrary action." *Indian Health Service*, 885 F.2d at 917 (emphasis added). Indeed, Congress actually directed the FLRA to issue a regulation defining "compelling need"; there thus can be no doubt as to which agency's "expertise" Congress was relying on. It follows, then, that the FLRA, not HHS, is entitled to judicial deference as to its interpretation and application of the phrase "compelling need."

■ Once it is determined to whom deference is owed, there is not a good deal left to this case, because the term "compelling need" is not susceptible to precise measurement and we must therefore defer to any reasonable interpretation or application of it. The FLRA's regulation defines a need that is compelling as one that is to be distinguished from a need that is only "helpful" or "desirable." 5 C.F.R. § 2421.11(a).[2] Petitioner challenges that definition of compelling as too restrictive, but its challenge is lacking both analytical and legal support. The FLRA properly drew on the legislative history of the Act in determining that Congress meant "compelling need" to be a *narrow* exception to an agency's duty to bargain. *See Lexington– Blue Grass Army Depot, Lexington, Kentucky and American Fed'n of Gov't Employees*, 24 F.L.R.A. 50, 53–54 (1986). But even aside from the legislative history, we do not take seriously the notion that the FLRA's distinction between helpful or desirable and compelling can be thought to be an unreasonable interpretation of the statute. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). Of course, what might be thought compelling (reasonably) to one person could be thought only helpful or desirable (reasonably) to another, but that is exactly why which agency gets deference is so important.

HHS further argues (as best we understand the argument) that even if the FLRA's regulation defining compelling need is reasonable, its application of that

---

1. 5 U.S.C. § 7117(a)(1) permits the executive branch to preempt collective bargaining on a subject by issuing a government-wide regulation without a showing of compelling need. But Congress surely assumed that such a regulation—requiring as a practical matter presidential authorization—would not often be issued.

2. The regulation states in pertinent part:

A compelling need exists for an agency rule or regulation concerning any condition of employment when the agency demonstrates that the rule or regulation meets one or more of the following illustrative criteria.

(a) The rule or regulation is essential as distinguished from helpful or desirable, to the accomplishment of the mission or the execution of functions of the agency or primary national subdivision in a manner which is consistent with the requirements of an effective and efficient government.

definition in this case is arbitrary. The FLRA, however, has consistently rejected similar agency arguments advanced to justify refusing to bargain over the scope of smoking bans. *See, e.g., National Ass'n of Gov't Employees, and Dep't of the Army, Fort Leonard Wood, Missouri*, 26 F.L.R.A. 593 (1987); *see also Indian Health Service*, 885 F.2d at 914–917.

To be sure, in *Indian Health Service* the agency argued that the smoking ban was justified under another exception to collective bargaining obligations—that it was essential to the agency's "'method and means of performing work,'" *id.* at 913 (quoting 5 U.S.C. § 7106(b)(1)), because the Indian Health Service, a constituent part of HHS, has as a prime responsibility the advancement of the health of American Indians. But it was nevertheless the same "good example" rationale sailing under a slightly different statutory flag which the FLRA rejected, reasoning that the union's bargaining proposal for designated smoking rooms did not directly interfere with the agency's mission, a conclusion with which we agreed, *id.* at 914–918.[3]

Still, petitioner, pointing to the testimony of Surgeon General Koop that HHS simply *cannot* act as an effective advocate for a smoke-free workplace in the nation unless it creates such an environment within its own facilities, argues that the FLRA unjustifiably described its claimed "compelling need" as speculative. The testimony in question, however, is not a factual assertion; it is an opinion which the FLRA was not obliged to credit. To say that the FLRA was bound to accept the Surgeon General's testimony is simply another way of arguing that we (and the FLRA) should defer to HHS's judgment as to whether a complete smoking ban is essential rather than only helpful or desirable.[4]

Perhaps because of the difficulties inherent in its case before the Authority, HHS shifts its focus on appeal to the argument that its "compelling need" stems from its concern for its employees' health—which is also, in HHS's view, essential to its mission. HHS barely preserved this contention below by pointing to its employees' health risk as part of its "good example" argument. But HHS goes so far in this court as to argue that the Occupational Safety and Health Act, which imposes on all agencies a duty "to provide safe and healthful places and conditions of employment," 29 U.S.C. § 668(a), mandates the smoking ban. This argument was not even hinted at below so, of course, we may not entertain it.[5]

In any event, we do not dispute, and we do not understand the FLRA to dispute, that all agencies are legitimately concerned with their employees' health. It is hard to see how it can be argued, however, that HHS's concern for its employees can be qualitatively different from that of other government agencies. Its health-based argument is consequently a collateral attack on the government-wide GSA regulation referred to above. That regulation, it will be recalled, governs smoking in federal buildings and requires that agencies accommodate the needs of smokers where feasible, 41 C.F.R. § 101–20.105–3(a)(2). Although an agency has discretion to "establish[] more stringent guidelines," 41 C.F.R. § 101–20.105–3(a)(3), the GSA regulation instructs the agency to "meet its [collective bargaining] obligation under 5 U.S.C. Ch.

---

**3.** Indeed, HHS argued below that the smoking ban falls within the statutory exception to the duty to bargain involved in *Indian Health Service,* but has abandoned that contention on appeal.

**4.** HHS makes a rather labored claim that the FLRA misdefined HHS's mission by underestimating the importance of its political advocacy role on health matters (a role which is not specified in statute). But since the FLRA accepted HHS's definition of its own mission, we do not take this argument seriously. We note,

however, that an agency might try to "define" its mission in such a fashion as to rob the FLRA of the deference to which it is entitled and that the FLRA might well be justified in not accepting such a "definition."

**5.** We note, *en passant,* that the Department of Labor, which enforces OSHA, has not so interpreted OSHA; thus, if HHS were correct, that suggests, presumably, that all other government agencies following the GSA regulation were in violation of OSHA as well (a rather interesting situation).

71," 41 C.F.R. § 1–20.105–3(g). And to the extent that the GSA regulation gives HHS discretion regarding its smoking policy, HHS is obligated by the FSLMRA "to exercise that discretion through negotiation." *Department of the Treasury v. FLRA*, 836 F.2d 1381, 1384 (D.C.Cir.1988) (quotation omitted). With this backdrop, we think HHS has no basis to quarrel with the FLRA's refusal to designate a regulation prohibiting bargaining over smoking on HHS premises as arising out of "compelling need" because of concern with its employees' health. It would appear that HHS's quarrel is instead with the Administration.

\* \* \* \* \* \*

Accordingly, the petition for review is denied and the cross-petition is granted.